# Exhibit 2 – Golaub Deposition

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

```
1              IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION
     MICHAEL AERTS,              )
3                                )
          Plaintiff,             )
4                                )
     v.                          )
5                                )   Civil Action
     TRYSTAR ENTERPRISES,        )   No.
6    LLC,                        )   1:23-cv-1547-AT-CCB
                                 )
7         Defendant.             )   JURY TRIAL DEMANDED
                                 )
8                                )
                                 )
9                                )
                                 )
10

11                        - - -

12

          The Videoconference Deposition of
13
                    Aaron Golaub
14
              (Taken by the Plaintiff)
15
              Taken Remotely via Zoom
16
               November 14, 2023
17

18   Reported by:   Christopher J. Tomko
                    Certified Court Reporter
19                  Georgia
                    License No. 4802-6210-2922-0352
20

21

22

23

24

25
```

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 2

```
1   STATE OF GEORGIA
2   COUNTY OF FULTON
3   VIDEOCONFERENCE DEPOSITION OF AARON GOLAUB
4
5           Pursuant to Article 8.B of the RULES AND
6   REGULATIONS OF THE BOARD OF COURT REPORTING OF THE
7   JUDICIAL COUNCIL OF GEORGIA, I make the following
8   disclosure:
9           I am a Georgia Certified Court Reporter.
10  I am here as a representative of Huseby Global
11  Litigation.
12          Huseby Global Litigation was
13  contacted by the offices of Barrett & Farahany to
14  provide court reporting services for this
15  videoconference deposition.  Huseby Global
16  Litigation will not be taking this
17  videoconference deposition by O.C.G.A. 15-14-37
18  (a) and (b).
19
20
21
22
23
24
25
```

Page 4

```
1               TRANSCRIPT CODES
2
3   --          Interruption/Change/Cross-Talk
4   . . .       Incomplete thought
5   (sic)       Word/phrase written as said
6   (PH)        Word spelled phonetically
7
8
9
10
11              - - -
12          The videoconference deposition of
13  Aaron Golaub, taken by the Plaintiff,
14  remotely via Zoom, on the 14th day of
15  November 2023, at 10:15 a.m., with the
16  reading and signing of the deposition
17  transcript being waived before Christopher
18  J. Tomko, Certified Verbatim Court Reporter
19  in and for the State of Georgia.
20
21
22
23
24
25
```

Page 3

```
1           APPEARANCES OF COUNSEL
2
3
4   ON BEHALF OF THE PLAINTIFF VIA VIDEOCONFERENCE:
5   V. SEVERIN ROBERTS
        Attorney-at-Law
6   Barrett & Farahany
        P.O. Box 530092
7   Atlanta, Georgia 30353
        SEVERIN@JUSTICEATWORK.COM
8
9
10  ON BEHALF OF THE DEFENDANT VIA VIDEOCONFERENCE:
11  IAN E. SMITH
        Attorney-at-Law
12  Spire Law
        1230 Peachtree Street NE
13  Suite 1900
        Atlanta, Georgia 30309
14  IAN@SPIRELAWFIRM.COM
15
16  ALSO PRESENT VIA VIDEOCONFERENCE:
17  George Shaw
        Althea Shaw
18
19
20
21
22
23
24
25
```

Page 5

```
1               TRANSCRIPT INDEX
2
3   Appearances Page                              3
4   Index to Examinations                         6
5   Index to Exhibits                             7
6   Proceedings                                   8
7   Oath                                          8
8   Reporter's Disclosure                         2
9   Reporter's Certificate                       45
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 6

```
1              INDEX TO EXAMINATIONS
2    Examination of Aaron Golaub              Page
3        Examination by Mr. Roberts             8
```
```
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 7

```
1              INDEX TO EXHIBITS
2
    Exhibit          Description            Page
3
              Plaintiff's Exhibits
4
5
      Exhibit 1   Document (Late-filed)       42
6
7     Exhibit 2   Document (Late-filed)       42
8
```
```
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 8

```
1    (The videoconference deposition of Aaron Golaub
2        commenced at 10:15 a.m. on
3        November 14, 2023.)
4          P R O C E E D I N G S
5              - - -
6        (Whereupon previously without
7    objection, it was stipulated and agreed by
8    all counsel of record that the court
9    reporter has authorization to swear in the
10    witness remotely.)
11              AARON GOLAUB,
12    having been first duly sworn, testified as
13    follows:
14              EXAMINATION
15    BY MR. ROBERTS:
16        Q.  Sir, could you state your full name,
17    please?
18        A.  Aaron Golaub.
19        Q.  And what is your residential address?
20        A.  It's 2951 Satellite Boulevard, Duluth,
21    Georgia, 30096, Apartment 224.
22            MR. SMITH:  Well, can I just state
23        that Mr. Golaub will be testifying with
24        respect to Topics 2 and 3 from the 30(b)(6)
25        notice?
```

Page 9

```
1            MR. ROBERTS:  Okay.
2    BY MR. ROBERTS:
3        Q.  And where are you currently employed?
4        A.  I did not hear.
5        Can you repeat?
6        Q.  Where are you currently employed?
7        A.  I'm one of the partners of Trystar
8    Enterprises.
9        Q.  And how long have you been in -- or how
10    long have you been a partner with that business?
11        A.  From the start, 2014.
12        Q.  Okay.  And were you involved in the
13    hiring of the -- Michael Aerts in June of 2022?
14        A.  Not at the beginning.
15        Q.  Okay.  You understand that there was some
16    kind of an incident that occurred on August the 11th
17    of last year with Mr. Aerts; is that correct?
18        A.  Correct.
19        Q.  Take me through, with as much detail as
20    possible, what your understanding as to what
21    occurred.
22        And what I mean by that is am I to
23    understand when -- who first informed you of a
24    potential incident?  When did they inform you?
25        Kind of take me through what happened
```

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 10

1  with respect to that incident.
2           And do you recall ever receiving that
3  information?
4       A.   Okay.  I received a phone call from Mr.
5  Aerts about an incident.  Someone called him a racial
6  slur, and he stated that he drives a red truck, so I
7  asked him to send me the photos of the truck so I can
8  identify who it is.  I didn't recognize the truck.
9           I reached out to my superiors.  They said
10  they know who it is, and then I called up Mr. Aerts.
11  I asked him, Where are you?
12          He said he's still in the same spot just
13  sitting.  Go -- I'm going to call John, and John's
14  going to drop you a pin for a location for you to
15  move from that location.
16          And I'm going to head there because I was
17  anywhere from 40 minutes to an hour out from where --
18  the location.  So they went ahead and -- I guess, he
19  went ahead and leave the location where the incident
20  happened.
21          So while he was driving, he called me
22  back, and he was explaining how the guy hit the truck
23  and -- but there's no damage.
24          Then I asked him, Where did he hit it?
25  What did he use to hit the truck?

Page 11

1           He said, He punched it.
2           And I said, Okay.  Don't worry about it.
3  Just meet John, and I will be there.
4           So I was on my way there when Andrew
5  Thompson, which is the supervisor, called me.
6           He said, You need to hurry up and get
7  here.
8           And I asked him, What's going on?
9           He said, Because Mike won't leave this
10  guy Lee alone.
11          And I said, I thought they moved.
12          He said, Yeah.  Lee was dropping off some
13  cable or something out there -- sorry -- at the
14  location that John and Andrew and Mike was.
15          So I told him, I'm getting off the exit,
16  so I should be there in less than 60 seconds.
17          I got there.  I called Mike.  I said, You
18  need to stop putting fuel to the fire.  Let's go.
19          He said -- he turned and said, He just
20  needs to apologize for what he said.
21          And I'm like, Let's go.  We're down here.
22  We're working.  Let's move to the cabinet so we can
23  sort this out.  Now, we eventually moved from that
24  location and -- somewhere where we can talk and get a
25  full understanding of what was going on.

Page 12

1           He said, He called me the N-word.
2           I said, That's not good.  So I said,
3  Okay.  What else?
4           He said, He threatened to shoot me in the
5  face.
6           And I said, Well, you need to go file a
7  police report.
8           And that's when I got on the phone.  I
9  called -- I didn't call Andrew.  I called Andrew's
10  boss and said, Hey, we cannot work with this
11  conditions, someone calling my guy the N-word.
12          And he said, I'll take care of it.
13          And that was it.
14          That guy was immediately fired that same
15  day after that situation.  Mike left and went to the
16  police station.  He went to Opelika because that's
17  where we was.
18          Opelika said, No.  He has to go to
19  Tuskegee, which is around 40 minutes' drive to an
20  hour -- 45 -- it depends on traffic.
21          He reached -- when he got there, he
22  called me and said, I do not know the person's name.
23          So I called Andrew.  Andrew gave us the
24  name to give to Mr. Aerts while filing the report.
25  He asked me for the name of the company, which I

Page 13

1  don't remember.  I gave him the name.  He asked me
2  for the address of the business.
3           (Reporter asked for clarification.)
4           THE WITNESS:  Supervisors don't get
5      information about the business.
6           (Reporter asked for clarification.)
7           THE WITNESS:  Correct, and I stated, I
8      don't have it.  Andrew was working and
9      trying to get the address and any
10     information we can get on this guy to give
11     to him while he was at the police station.
12     So we got him the name, and I think John
13     sent him the tag of the vehicle he was
14     driving.
15          So it took him around -- he was left
16     for a couple of hours to file his police
17     report.
18          On his way back, he said, I'll file a
19     report.  He should have it in a week or so.
20     He can pick up a copy.
21          And I said, Okay.
22          We got back to the same location where
23     we meet after the incident because it was
24     closer -- it's like an in-between meeting
25     location to the hotel.

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 14

1      And I -- we're talking, and I said,
2  Hey, how you feeling? You okay? You good?
3      He said, Yeah, I'm good. I wish he
4  would have just apologized, and I would
5  have dropped this.
6      I said, Well, you know, there's not
7  much I can do or nothing, but if there's
8  anything I can do to make you feel any
9  different.
10      He said, No. We're good. Let's just
11  go to the hotel.
12      He had some beer in the fridge. He's
13  going to go ahead and -- he's going to call
14  it a day.
15      I said, Okay.
16      And we left it at that and moved on.
17  BY MR. ROBERTS:
18      Q.   Let me show you a document and ask you a
19  couple questions. One second.
20      A.   Yes, sir.
21          (An item was displayed for all parties to
22  view.)
23  BY MR. ROBERTS:
24      Q.   So this is a document that was produced
25  by your employer -- or not -- by you -- your company

Page 15

1  in this case.
2      Have you seen this before?
3      A.   That's the written statement. Let's see.
4          John Gardner.
5      Q.   Okay. And obviously, this was done --
6  this was an e-mail that was sent during this
7  litigation back in --
8      A.   Correct.
9      Q.   -- earlier this year; is that correct?
10      A.   A detailed information of what happened.
11      Q.   Okay. And do you see in the sentence --
12  it reads: The owner of the other company, Lee, was
13  trying to explain the miscommunication, so Lee was
14  the person that is accused of calling Mr. Aerts a
15  racial slur; is that correct?
16      A.   Correct.
17      Q.   And Lee was the owner of that business?
18      A.   As far as I know, he is. I have no
19  communication with him.
20      Q.   Okay. How is it he was fired? Are you
21  saying his company was fired from the jobsite?
22      A.   His company was terminated -- his
23  contract -- because of the racial slur that Michael
24  Aerts said he -- what he called him, and the company
25  was terminated that same day.

Page 16

1      Q.   Okay. And you're basing that on what
2  Angel (sic) Thompson told you; is that correct?
3      A.   Correct.
4      Q.   Okay. And Angel Thompson works for
5  the -- well, how do you pronounce it -- Comtrac --
6  with --
7          (Cross-talk.)
8          THE WITNESS: Comtrac.
9          (Cross-talk.)
10  BY MR. ROBERTS:
11      Q.   Go ahead.
12      A.   Yeah. Andrew Thompson. He's the field
13  supervisor at that time on-site.
14      Q.   Okay. And he's employed by Comtrac?
15      A.   Correct.
16      Q.   Okay. And this other company that Lee
17  worked for -- that Lee owned, that was someone that
18  does fiber splicing as well?
19      A.   No. As far as I know, he is an aerial
20  construction company.
21      Q.   And what company is that?
22      A.   I don't recall the name of his company.
23  But we know he does aerial construction. It's a
24  large project. We don't know everyone.
25      Q.   Yeah.

Page 17

1          And then if we go forward, Mr. Aerts was
2  terminated on September the 1st; is that correct?
3      A.   Correct. He received a notice of
4  termination on that day.
5      Q.   Okay. And what was the first day that
6  you discussed terminating Mr. Aerts' employment with
7  Mr. Shaw?
8      A.   A few days before.
9      Q.   Okay. And is that -- and is a few days
10  before the termination the first time you discussed
11  terminating Mr. Aerts' employment with anybody?
12      A.   We -- I spoke to John previously about
13  his training, and -- but I never spoke to John fully
14  about when or what, so John was his immediate
15  supervisor, so I would take the information John gave
16  me, and then I sum it all up.
17      Q.   Okay. And did you consult with Mr.
18  Gardner about terminating Mr. Aerts?
19      A.   On that day?
20      Q.   At any point.
21      A.   Previously.
22      Q.   Did you tell Mr. Gardner that you were
23  going to terminate Mr. Aerts?
24      A.   Didn't directly tell him that I'm going
25  to terminate him. We spoke about his performance.

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 18

1    Q.    Okay.  What day did you speak about his
2    performance?
3        A.    It's -- one of the first times we would
4    speak about his performance is somewhere around in
5    the -- around a week, we had another conversation
6    about his performance.  A week prior to termination,
7    we had spoken about performance.
8        Q.    Okay.  So the first time there was a
9    discussion regarding Mr. Aerts' job performance was a
10   week before his termination?
11       A.    Not that -- no.  Not the first time.
12           But when it's gotten -- so I took over
13   training Mr. Aerts because he wasn't performing.
14       Q.    Okay.  When did you take over training of
15   Mr. Aerts?
16       A.    So me and Mr. Aerts start around -- I
17   would say probably the 6th of August, I started -- we
18   gave him a vehicle and a stopwatch, and I --
19   throughout the day, I will go help, so -- and
20   that's how everything went.
21       Q.    And is your testimony that you did not
22   inform Mr. Gardner that you were letting Mr. Aerts go
23   until after you had terminated Mr. Aerts?
24       A.    Correct.  So I didn't tell him I was
25   terminating Mr. Aerts that day, when he was

Page 19

1    terminated.
2        Q.    Let me show you another document and ask
3    you some questions.
4           MR. SMITH:  Are you marking that
5        document, Severin?
6           MR. ROBERTS:  No.
7             (An item was displayed for all parties to
8        view.)
9    BY MR. ROBERTS:
10       Q.    Okay.  Can you see this okay, sir?
11       A.    Yes.
12       Q.    Okay.  I take it you've seen these text
13   messages before, haven't you?
14       A.    Correct.
15       Q.    I take you've --
16       A.    Yes.
17       Q.    -- seen them in the last week, haven't
18   you?
19       A.    Correct.
20       Q.    Yeah.
21           And in these text messages, the Bates
22   stamp is Aerts' 31 and 32.
23           You understand that these are text
24   messages between John Gardner and Michael Aerts?
25       A.    Correct.

Page 20

1    Q.    Okay.  And if we look here, it says, On
2    September the 1st at 8:27 a.m., They fired ya boy.
3    Didn't give me a reason.
4           Did I read that correctly?
5        A.    No, I don't see where they said, They
6    fired your boy.
7           Oh, sorry.  I see it.  And yes, they --
8        Q.    If we go back, we have John Gardner
9    responding, What the fuck?  For real?
10       A.    Yeah.
11       Q.    I'm shortening the what the fuck with
12   WTF; is that correct?
13       A.    Correct.
14       Q.    Okay.  And then below that, it says,
15   Yeah.  Couldn't give me a reason.  Then Aaron had
16   George fire me, not himself.
17           And then if we go below that, and then it
18   says, Damn, bro.  You told him there was no
19   improvement.
20           You understand that, on September the
21   1st, there was later an e-mail sent to Mr. Aerts,
22   which gives an alleged reason for terminating him?
23       A.    I don't -- an e-mail?  No.  I don't have
24   that conversation.
25       Q.    Give me one second.

Page 21

1             (An item was displayed for all parties to
2        view.)
3    BY MR. ROBERTS:
4        Q.    Okay.  Can you see this?
5        A.    (Witness reviewed document.)
6           Yeah.  Termination letter.
7        Q.    Yeah.
8           And the date of this is -- and I'm
9    willing to -- I'm marking this as an exhibit.
10           This is an e-mail that was sent to
11   Michael Aerts at 1:57 p.m. on September the 1st of
12   2022; is that correct?
13       A.    Correct.
14       Q.    And it says, We have unfortunately
15   decided to end your tenure with Trystar.  This is due
16   to lack of improvement in your training.  Secondly,
17   the lack of dependability, which has caused the
18   company great inconvenience.
19           Did I read that correctly?
20       A.    Correct.
21       Q.    And these are the alleged reasons for
22   which Trystar claims it then terminated Mr. Mike --
23   Mr. Aerts?
24       A.    Yes, sir.
25       Q.    Okay.  And if we go back where we were --

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 22

1  I wanted to show you that.  We'll go back to where we
2  were.  One second.
3          (An item was displayed for all parties to
4  view.)
5  BY MR. ROBERTS:
6      Q.  If we go back here, it would appear that,
7  at 2:22 p.m., about 25 minutes after this e-mail, Mr.
8  Aerts reached back out to John Gardner.
9          Does that look correct?
10     A.  Correct.
11     Q.  He says, Damn, bro.  You told him there
12  was no improvement in my training?
13          Did I read that correctly?
14     A.  Yes.
15     Q.  And then below that, Mr. Gardner
16  responds, I wasn't consulted in that decision
17  whatsoever.
18          Did I read that correctly?
19     A.  Correct.
20     Q.  Okay.  Is that a true -- is it fair to
21  say you didn't consult Mr. Gardner in any way?
22     A.  In the firing?
23     Q.  Sure.
24     A.  He was not consulted that day about
25  firing Mr. Aerts.

Page 23

1      Q.  Was he ever consulted?
2      A.  We communicated about his performance
3  numerous times.
4      Q.  Okay.  Tell me --
5      A.  So I --
6      Q.  I mean, so -- just so you understand,
7  you've been asked to identify -- you're now -- you've
8  been designated to speak on behalf of the company
9  with respect to two different topics in our
10  deposition notice today.
11     A.  Correct.
12     Q.  One of those topics -- and let's do this.
13         Before we get to that, what are the dates
14  that you claim you talked to Mr. Gardner about Mr.
15  Aerts' performance?
16     A.  I don't have the specific dates because
17  we speak almost every evening about issues goes (sic)
18  on in the field and performance, then how's (sic)
19  everyone is doing.  So Mr. Gardner was off when Mike
20  was fired.
21     Q.  Is it normal for you to fire people on
22  someone's team without telling their supervisor?
23     A.  It's our team.  It's -- I did it.  I'm
24  the one who makes the final decision as firing.  John
25  is the field supervisor, immediate field supervisor.

Page 24

1      Q.  Can you think of any other instance in
2  which you have fired someone on Mr. Gardner's team
3  without telling Mr. Gardner before making the
4  termination?
5      A.  He would be the first person.
6      Q.  Mr. Aerts would be the first time you've
7  done that?
8      A.  Yeah.  We -- our splicers don't really
9  quit.  They last long -- or we don't have to fire.
10  He was in training.
11     Q.  Okay.
12     A.  And he was just not grasping the work.
13     Q.  Okay.  How many splicers have you
14  terminated in the last two years?
15     A.  Two years?  Probably two that I can
16  remember.
17     Q.  Okay.  And how many splicers had you
18  fired during that time period?
19     A.  I'm not sure.
20     Q.  Okay.  But again, you've never -- there's
21  -- you cannot think of a single incident other than
22  Mr. Aerts in which you have terminated someone on Mr.
23  Gardner's team without first telling Mr. Gardner
24  you're going to make the termination?
25         MR. SMITH:  Objection to form.

Page 25

1  BY MR. ROBERTS:
2      Q.  You can answer.
3      A.  I didn't hear you.
4      Q.  You cannot identify a single incident in
5  which you fired someone on Mr. Gardner's team without
6  first telling him you were going to do so, apart from
7  Mr. Aerts?
8          MR. SMITH:  Same objection.
9          THE WITNESS:  I -- I --
10  BY MR. ROBERTS:
11     Q.  You can answer.  There's nothing --
12  anytime that he can land an objection -- but you're
13  still required to answer the question.
14         So you can answer it.
15     A.  I wouldn't say Mr. Gardner's team.  It's
16  the company.
17     Q.  I hear you.
18     A.  Mr. Gardner --
19     Q.  Okay.  I'm simply asking -- you've
20  already answered it.  I just want it very clear.
21         There is not another incident in which
22  you have fired someone that was on the team that Mr.
23  Gardner is on without first telling Mr. Gardner that
24  that was going to happen, except --
25     A.  No.  I've not -- or fired anyone before

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 26

1  because Mr. Gardner had just started supervising the
2  team.
3      Q.  Okay.  When did Mr. Gardner start
4  supervising the team?
5      A.  It was the project.  He was the project
6  lead for that project when we started it.  I can't
7  remember the date when we started it, but he was the
8  project lead on that, so I was on it also, working.
9      Q.  Okay.  And then we looked at just a
10 little while an e-mail that was sent to Mr. Aerts on
11 September 1st at 1:57 p.m.
12          Do you recall --
13     A.  Correct.
14     Q.  Right?
15          Mr. Aerts was an hourly, apprentice-level
16 worker; is that correct?
17     A.  Correct.  He's a apprentice.
18     Q.  Is your company in the business of
19 providing e-mails to terminate people and giving them
20 reasons in the e-mail?
21     MR. SMITH:  Objection to form.
22 BY MR. ROBERTS:
23     Q.  You can answer.
24     A.  Repeat your question.
25     Q.  It seems to me very bizarre that an

Page 27

1  hourly apprentice was given an e-mail letting him --
2  giving him reasons for his termination.
3          So what I'm asking you is:  Can you think
4  of any other incident in which you as -- your
5  business -- has e-mailed an apprentice worker with
6  reasons for their termination?
7      A.  Everyone we -- as far as we know, we have
8  to give someone a reason why we're terminating them,
9  and that was his reason.
10     Q.  I'm talking about the concept of
11 e-mailing that to them.
12          Why did you send an e-mail to Mr. Aerts?
13     A.  When someone quits, you give them -- you
14 give them a termination letter.
15     Q.  Can you identify any other people that
16 have received an e-mail giving them reasons for their
17 termination?
18     A.  I would have to check that with the
19 office because I'm pretty sure we e-mail everyone
20 that term- -- was terminated.
21     Q.  Okay.  As you sit here today, can you
22 identify an e-mail?
23     A.  I can't recall all of the e-mails that
24 goes out.
25     Q.  Okay.

Page 28

1      A.  I would have to check with the office to
2  verify those because I don't --
3      Q.  But you can supplement for -- you can
4  identify people that have been given reasons for
5  their termination in e-mails?
6          You can find that information; correct?
7      A.  Yeah.  We should be able to.
8      Q.  Okay.  So with respect to the reasons for
9  Mr. Aaron's termination.
10          Let me do this.  Give me one second.
11          (An item was displayed for all parties to
12 view.)
13 BY MR. ROBERTS:
14     Q.  I asked you a little while ago whether
15 the -- was put in this e-mail here, this September
16 1st e-mail that identifies purported reasons for the
17 -- this termination.
18          You've stated this is -- this accurately
19 describes what you consider to be the reasons for Mr.
20 Aerts' termination; is that correct?
21     A.  Correct.
22     Q.  Okay.  So looking at lack of improvement
23 in training.
24          Did you ever speak to Mr. Aerts about a
25 lack of improvement in his training before firing

Page 29

1  him?
2      A.  We speak multiple times about his
3  training, and he -- you know, he -- it --
4          (Reporter asked for clarification.)
5  BY MR. ROBERTS:
6      Q.  You muted yourself.
7          Okay?
8      A.  Can you hear me?
9      Q.  Yes.
10     A.  Okay.  We spoke verbally multiple times
11 about his training.  We're a small company.  We don't
12 really have the resource to write up every incident
13 that happened, but we speak numerous times about --
14     Q.  So when did you --
15     A.  -- about --
16     Q.  What dates did you speak with Mr. Aerts?
17     A.  So around -- I would say -- a date around
18 the 4th or the 5th of August.  I would speak to him
19 about previous mistakes he made the day before on a
20 location he was, and then he went ahead and made the
21 same mistake again, and he actually wrote it -- wrote
22 me a message saying I know I effed up again.
23          So -- and I said to him, John spoke to
24 you about it, so that's it.  I'll -- John will take
25 care of the situation because I was in a different

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 30

1    market at the time.
2        Q.  Okay.  Apart from that, any other times
3    in which you spoke with Mr. Aerts regarding --
4        A.  Yes.  After that incident, he constantly
5    making the same mistakes over and over.  We're like,
6    What's going on?
7            So I started the training in the last few
8    -- I would say few weeks of his term.  Up to his
9    termination, he was working with me directly,
10   training, and he keep making the same mistakes over
11   and over.
12           I'm like, Mike, come on.  I'm teaching
13   you this stuff today.  And tomorrow, you come; you
14   forget it.  What's on your mind?  This job is very
15   important because we have to meet our -- we have
16   deadlines, and we have to be prompt.
17           When someone told us to be on-site at a
18   certain time, we have to be there.  We have to get
19   the job done.  So you have to be disciplined to be
20   able to perform this job.
21       Q.  Which job are you referring to?
22       A.  Splicing.  Because I was training him to
23   see -- hopefully he gets better at it.
24       Q.  When using the term this is an important
25   job, what --

Page 31

1        A.  The splicing is a very important job
2    because we deal with network.  So when we take
3    someone's network down, we have to put it back in a
4    time -- in a timely manner.  So that's what we do.
5        Q.  Okay.
6        A.  We splice, and we build networks.
7        Q.  And Mr. Golaub, please, when I'm -- make
8    sure I get to ask the full question before you
9    answer -- that the court reporter has a terrible time
10   when we interrupt each other.  I'm trying not to
11   interrupt you, and --
12       A.  All right.  Unless you're getting --
13       Q.  I know, again, you're not trying to do
14   anything.  I'm just trying to make sure we -- let me
15   finish the question before you start answering.
16       A.  Okay.
17       Q.  Okay.  So let's break that apart.
18           What are the issues -- what specifically
19   -- I want to know the issues he was having with
20   improving in training specifically?
21       A.  Okay.  Specifics is we deal with colors
22   and numbers.  So when we send you to a location, it's
23   -- I -- it's best way I can explain it -- I don't
24   know if it makes sense to you because you're not in
25   this field -- is we send you to splice two cables.

Page 32

1    And it's basically saying, Hey, at this location,
2    we're going to splice fiber 4 two fiber 144.
3            So you have to learn the different counts
4    and the different colors.  And when we give him
5    instructions -- we gave him charts and stuff -- he
6    keep making mistakes because he would not look at
7    charts.
8            Basically, he's doing what he's doing,
9    and if you splice the wrong fiber to the wrong
10   customer, then we have an issue.  The network won't
11   work, and it'll take us hours to track down the
12   mistake because we're dealing with miles of cable.
13   So we have to start from the main hub and try to
14   troubleshoot it back, and that's where he was lacking
15   performance and not receiving the training that both
16   me and John was giving him because he was -- he keep
17   making the same mistakes over and over again.
18       Q.  Okay.  And with respect to this, quote,
19   Lack of dependability, what do you mean by that?
20       A.  Well, lack of dependability -- he always
21   has something going on -- calling out.
22       Q.  Okay.  So what --
23       A.  Like, he was supposed to --
24           (Cross-talk.)
25           THE WITNESS:  Go ahead.

Page 33

1    BY MR. ROBERTS:
2        Q.  Let me finish the question before you
3    answer it, please.
4            What dates did he call out?
5        A.  So he called out on the -- let me look at
6    my calendar.
7            So August, he called out at -- that's 23.
8    In there -- in the e-mail where he keeps texting me,
9    asking for days off, so.
10           August 8th, he was supposed to show up at
11   work.  He didn't show up.
12           August 9th, he didn't show up.  He asked
13   some more time off.
14       Q.  So you're looking at -- what notes are
15   you looking at?
16       A.  I'm looking at my calendar.
17           (Witness indicating.)
18       Q.  Okay.  Do you have specific notes you put
19   in there to help you with your deposition today?
20       A.  No.  I just know the dates because they
21   were in the text message that you have.
22       Q.  Okay.  So you're saying he called out on
23   August 8th and 9th?
24       A.  Correct.
25       Q.  Okay.  What other dates?

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 34

1    A.    And there is two more times he called
2 out -- something to -- he had an emergency.  He
3 always having emergency, so he barely work a full
4 week because he's -- there's always something.
5    Q.    And then --
6    A.    But that's --
7    Q.    Did you ask him to go to a jobsite in
8 South Carolina somewhere around August the 16th?
9    A.    No.  Not ask him to go to a job.  He was
10 already.  When we worked in a -- the training is
11 basically in the southeast.  So we training all
12 markets.  We move from markets to markets.
13          So I didn't say, Hey, you need to go to
14 South Carolina.
15    Q.    You deny asking Mr. Aerts to go to a
16 jobsite in South Carolina?
17    A.    Yes.  I didn't ask him that week because
18 he wasn't ready to -- he only could rode -- travel
19 with me and John, so wherever me and John worked,
20 that's where he works.
21    Q.    And so you never asked Mr. Aerts to go to
22 a jobsite in South Carolina?
23    A.    I never asked him to go down to South
24 Carolina.  We spoke about all the different markets.
25 We will start in Opelika, and then we went to

Page 35

1 Savannah, but he would always -- John and I had
2 stopped working in South Carolina months before.
3    Q.    Okay.  So did you not have a job starting
4 in South Carolina at that time?
5    A.    We do have a jobsite there, but there is
6 someone there taking care of it, and if they ever
7 need help, they would call us, and we'll go in and
8 help.
9    Q.    And did you need help at that job --
10 South Carolina jobsite at that time back in --
11    A.    No.  We never did.
12         (Reporter asked for clarification and
13 reminded the parties to speak one at a time.)
14         THE WITNESS:  I am waiting.  He's
15    paused.  He's paused, so I'm not sure -- so
16    that's why I keep saying I'm cutting him
17    off.
18 BY MR. ROBERTS:
19    Q.    I'll repeat the question, Mr. Golaub.
20    A.    Yeah.
21    Q.    So in August of '22, last year, you did
22 not have any need to send help to the South Carolina
23 jobsite?
24         MR. SMITH:  Objection to form.
25         THE WITNESS:  No, sir.

Page 36

1         MR. ROBERTS:  He's already testified
2    to that.
3 BY MR. ROBERTS:
4    Q.    Back in August of 2022, did you have any
5 need to send help to the South Carolina jobsite?
6    A.    No.
7    Q.    Okay.
8    A.    No, sir.
9    Q.    Okay.  And you did not ask Mr. Aerts to
10 go to the South Carolina jobsite?
11    A.    No, sir.  Not in August --
12    Q.    So what happened?
13    A.    -- or ever.
14    Q.    Okay.
15    A.    We spoke about all the different markets.
16    Q.    Okay.  But for clarity, at no point did
17 you ever ask Mr. Aerts to go to the South Carolina
18 jobsite; is that correct?
19    A.    We spoke about all the markets we worked
20 in.
21         So I've never asked him specifically, I
22 need you to go to South Carolina.
23         No.  Because he would have to travel with
24 me or John if I do that because we never needed help.
25    Q.    Okay.  And where was that South Carolina

Page 37

1 jobsite?
2    A.    It's somewhere in the South Carolina and
3 Georgia border.  Rocks Hill (PH)?  Greensboro (PH)?
4 Somewhere.  It's a long road they're working a long
5 stretch of, so I don't have a specific address.
6    Q.    And take me through when you decided to
7 -- first, let me break this apart.
8         You decided to terminate Mr. Aerts a few
9 days before you actually terminated him; is that
10 correct?
11    A.    Correct.  I thought about it.  He's a
12 very good, fast talker.
13         He's like, I can do this.  I can do
14 better and stuff like that.
15         And I was like, Okay.  Mike, let's -- you
16 know -- we're going down to Savannah.  I'll meet you
17 there.
18         And we were supposed to meet at 7:00 a.m.
19 He didn't -- he called me after 1:00.
20         Said, Mike, Can't help you.
21         I mean, you were supposed to be here
22 earlier because you knew the situation.
23         He said, Yeah, but I'm urgent stuff
24 (sic).
25         I said, Okay.  Go ahead.

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 38

1    Q.   And so then when you decided -- first
2    off, is it your position that you made the decision
3    to terminate Mr. Aerts?
4        A.   Yes.  So I made the decision, and I
5    called my business partner and informed him that he
6    needs to receive the van.  In this business, our
7    peoples (sic) steal your tools, and stuff.  So we
8    want to make sure we get back all of our stuff.  And
9    we fired him at the office because it's a lot of very
10   expensive tools in that truck.
11       Q.   And you were there when Mr. Aerts was
12   terminated?
13       A.   No.  I was not present.
14       Q.   You were not physically there?
15       A.   No, I was not.
16       Q.   Why were you not there?
17       A.   I was driving back to town.
18       Q.   So you asked Mr. Shaw to perform the
19   termination; is that correct?
20       A.   Correct.
21       Q.   Okay.  And you did that despite the fact
22   that you were the one with more information as to why
23   you're saying it was being done?
24       A.   Yes.  He was following my instruction.
25       Q.   Okay.  Why didn't you sit down with Mr.

Page 39

1    Aerts to let him know he was being fired?
2        A.   I wasn't in town at the moment, and we
3    wanted to get it out the way because we had just
4    finished the project, and I was driving back, and I
5    stopped to rest.
6        Q.   How far away from the place in which he
7    was fired -- how far away from the termination
8    location were you?
9        A.   En route, five hours.
10       Q.   Okay.  When you say you began working
11   more closely with -- and I heard it.  You began
12   working more closely with Mr. Aerts in August of
13   2022; is that correct?
14       A.   Can you repeat your --
15       Q.   Did you begin working more closely with
16   Mr. Aerts yourself in August of '22?
17       A.   Correct.
18       Q.   Okay.  In the month of August, how many
19   days did you actually work on-site with Mr. Aerts?
20       A.   I was pretty much -- it's hard to say
21   because I was there most of the time.  I would say
22   because I was the one checking his work daily.  After
23   he -- we assigned him a task, if I don't get to check
24   it the same day, I'll check it the following day.
25       Q.   And of course, there's not any kind of

Page 40

1    written documentation that you counseled Mr. Aerts
2    prior to his termination?
3        A.   Only verbal.
4            (Reporter asked for clarification.)
5            MR. ROBERTS:  He said only verbal, but
6        maybe -- let me ask it again.
7    BY MR. ROBERTS:
8        Q.   Mr. Golaub, there isn't any documentation
9    of you counseling Mr. Aerts on his job performance,
10   is there?
11           MR. SMITH:  Objection to form.
12   BY MR. ROBERTS:
13       Q.   But you can answer the question.
14       A.   Okay.  Only verbal because there -- also,
15   it was done in the field verbally.
16       Q.   Uh-huh.
17           And I believe you said you're a small
18   business, earlier, that doesn't document well or
19   something like that?
20       A.   No.  I didn't say doesn't document well.
21   I said, you don't have the resource sometimes to
22   print write-ups in the field, so we do it verbally.
23       Q.   But you did have the resources to e-mail
24   an hourly worker with multiple reasons for his
25   alleged -- multiple alleged reasons for his

Page 41

1    termination; right?
2            MR. SMITH:  Objection to form.
3    BY MR. ROBERTS:
4        Q.   Anytime there's -- you can still answer
5    the question, Mr. Golaub.
6        A.   I'll pass.
7        Q.   You had time to send an e-mail to an
8    hourly worker with multiple reasons for terminating
9    him; is that correct?
10           MR. SMITH:  Again.  Same objection.
11   BY MR. ROBERTS:
12       Q.   It's a very simple question, Mr. Golaub.
13           Your company elected to send an e-mail to
14   an apprentice-level splicer, identifying multiple
15   reasons for why he was being terminated; is that
16   correct?
17           MR. SMITH:  Same objection.
18           You can answer, Aaron, if you can
19       answer.
20           THE WITNESS:  Yes.
21   BY MR. ROBERTS:
22       Q.   I don't think I have anything further.
23   Give me just a second.
24           No.  I don't have anything further.
25   Thank you.

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**

Page 42

1    MR. SMITH:  No questions.
2        (Reporter asked for clarification.)
3        MR. ROBERTS:  There are two exhibits.
4    We have -- Exhibit 1 will be the e-mail
5    from September the 1st, 2022.  That is the
6    note -- the termination e-mail.
7        And then the Exhibit 2 will be the
8    text messages between John Gardner and the
9    plaintiff, Michael Aerts.
10        (Plaintiff's Exhibit Nos. 1 and 2 were
11   marked for identification.)
12        MR. SMITH:  Counsel, can we identify
13   them by Bates number?
14        MR. ROBERTS:  Well, I don't actually
15   think you have Bates numbers on your
16   documents, which we let you do.  My
17   apologies.
18        MR. SMITH:  They are.
19        MR. ROBERTS:  The number -- the
20   termination e-mail is Number 11 -- Page 11,
21   defendant's production.
22        And then the Gardener text messages
23   were produced by the plaintiff rather than
24   the defendant, and those are Aerts' 31 and
25   -- through -3, I believe.

Page 43

1        MR. SMITH:  The e-mail is Exhibit 1,
2    and the second is Exhibit 2?
3        MR. ROBERTS:  Yeah.
4        MR. SMITH:  Okay.
5        THE REPORTER:  Okay.  You want to go
6    off the record?
7        MR. ROBERTS:  Yeah.
8        (Whereupon off the record, the witness
9    waived the right to read, review, and sign
10   the transcript of the above proceedings.)
11 (The videoconference deposition of Aaron Golaub
12 adjourned at 11:02 a.m. on November 14, 2023.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 44

1                    CERTIFICATE
2    State of Georgia
3    COUNTY OF FULTON
4
5        I, Christopher J. Tomko, Certified Court
     Reporter, certify that the foregoing transcript is
6    a true, correct, and complete record of the
     testimony given by the deponent, Aaron Golaub, who
7    was first duly sworn by me; that I am not a
     relative, employee, attorney, or counsel of any of
     the parties; nor financially interested in the
8    action; that the said deponent and counsel in the
     presence of each other and before me and waived the
9    reading and signing of the deposition; and the
     original deposition under seal shall be filed with
10   the court by the attorney taking the deposition.
         This certificate is expressly withdrawn
11   and denied upon disassembly and/or photocopying of
     the foregoing transcript, or any portion thereof,
12   unless such disassembly or photocopying is done by
     the undersigned Certified Court Reporter and
13   original signature and official seal is attached
     hereto.
14       WITNESS my hand and seal at FULTON County,
     GEORGIA, this, the 14th day of NOVEMBER 2023.
15
16
17
18
19
20        *Christopher Tomko*
21
22
23   _____
     Christopher J. Tomko
     Certified Court Reporter
24   Georgia License No. 4802-6210-2922-0352
25

Page 45

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**                    Index: -3..Aerts'

**-**

**-3**   42:25

**1**

**1**   42:4,10
  43:1

**10:15**   8:2

**11**   42:20

**11:02**   43:12

**11th**   9:16

**14**   8:3
  43:12

**144**   32:2

**16th**   34:8

**1:00**   37:19

**1:57**   21:11
  26:11

**1st**   17:2
  20:2,21
  21:11
  26:11
  28:16  42:5

**2**

**2**   8:24
  42:7,10
  43:2

**2014**   9:11

**2022**   9:13
  21:12  36:4

39:13  42:5

**2023**   8:3
  43:12

**22**   35:21
  39:16

**224**   8:21

**23**   33:7

**25**   22:7

**2951**   8:20

**2:22**   22:7

**3**

**3**   8:24

**30(b)(6)**
  8:24

**30096**   8:21

**31**   19:22
  42:24

**32**   19:22

**4**

**4**   32:2

**40**   10:17
  12:19

**45**   12:20

**4th**   29:18

**5**

**5th**   29:18

**6**

**60**   11:16

**6th**   18:17

**7**

**7:00**   37:18

**8**

**8:27**   20:2

**8th**   33:10,
  23

**9**

**9th**   33:12,
  23

**A**

**a.m.**   8:2
  20:2  37:18
  43:12

**Aaron**   8:1,
  11,18
  20:15
  41:18
  43:11

**Aaron's**   28:9

**accurately**
  28:18

**accused**
  15:14

**address**   8:19
  13:2,9
  37:5

**adjourned**
  43:12

**aerial**
  16:19,23

**Aerts**   9:13,
  17  10:5,10
  12:24
  15:14,24
  17:1,18,23
  18:13,15,
  16,22,23,
  25  19:24
  20:21
  21:11,23
  22:8,25
  24:6,22
  25:7
  26:10,15
  27:12
  28:24
  29:16  30:3
  34:15,21
  36:9,17
  37:8  38:3,
  11  39:1,
  12,16,19
  40:1,9
  42:9

**Aerts'**   17:6,
  11  18:9
  19:22
  23:15
  28:20
  42:24

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**                    Index: agreed..check

agreed   8:7

ahead   10:18,
  19  14:13
  16:11
  29:20
  32:25
  37:25

alleged
  20:22
  21:21
  40:25

Andrew   11:4,
  14  12:9,23
  13:8  16:12

Andrew's
  12:9

Angel   16:2,4

answering
  31:15

anytime
  25:12  41:4

Apartment
  8:21

apologies
  42:17

apologize
  11:20

apologized
  14:4

apprentice
  26:17
  27:1,5

apprentice-
level   26:15
  41:14

assigned
  39:23

August   9:16
  18:17
  29:18
  33:7,10,
  12,23  34:8
  35:21
  36:4,11
  39:12,16,
  18

authorization
  8:9

─────────────
         B
─────────────

back   10:22
  13:18,22
  15:7  20:8
  21:25
  22:1,6,8
  31:3  32:14
  35:10  36:4
  38:8,17
  39:4

barely   34:3

basically
  32:1,8
  34:11

basing   16:1

Bates   19:21
  42:13,15

beer   14:12

began   39:10,
  11

begin   39:15

beginning
  9:14

behalf   23:8

bizarre
  26:25

border   37:3

boss   12:10

Boulevard
  8:20

boy   20:2,6

break   31:17
  37:7

bro   20:18
  22:11

build   31:6

business
  9:10  13:2,
  5  15:17
  26:18  27:5
  38:5,6
  40:18

─────────────
         C
─────────────

cabinet
  11:22

cable   11:13
  32:12

cables   31:25

calendar
  33:6,16

call   10:4,
  13  12:9
  14:13  33:4
  35:7

called   10:5,
  10,21
  11:5,17
  12:1,9,22,
  23  15:24
  33:5,7,22
  34:1  37:19
  38:5

calling
  12:11
  15:14
  32:21

care   12:12
  29:25  35:6

Carolina
  34:8,14,
  16,22,24
  35:2,4,10,
  22  36:5,
  10,17,22,
  25  37:2

case   15:1

caused   21:17

charts   32:5,
  7

check   27:18
  28:1

39:23,24

checking
  39:22

claim  23:14

claims  21:22

clarification
  13:3,6
  29:4 35:12
  40:4 42:2

clarity
  36:16

clear  25:20

closely
  39:11,12,
  15

closer  13:24

colors  31:21
  32:4

commenced
  8:2

communicated
  23:2

communication
  15:19

company
  12:25
  14:25
  15:12,21,
  22,24
  16:16,20,
  21,22
  21:18 23:8
  25:16

26:18
29:11
41:13

Comtrac
  16:5,8,14

concept
  27:10

conditions
  12:11

constantly
  30:4

construction
  16:20,23

consult
  17:17
  22:21

consulted
  22:16,24
  23:1

contract
  15:23

conversation
  18:5 20:24

copy  13:20

correct
  9:17,18
  13:7 15:8,
  9,15,16
  16:2,3,15
  17:2,3
  18:24
  19:14,19,
  25 20:12,
  13 21:12,

13,20
22:9,10,19
23:11
26:13,16,
17 28:6,
20,21
33:24
36:18
37:10,11
38:19,20
39:13,17
41:9,16

correctly
  20:4 21:19
  22:13,18

counsel  8:8
  42:12

counseled
  40:1

counseling
  40:9

counts  32:3

couple  13:16
  14:19

court  8:8
  31:9

Cross-talk
  16:7,9
  32:24

customer
  32:10

cutting
  35:16

─────────

D

daily  39:22

damage  10:23

Damn  20:18
  22:11

date  21:8
  26:7 29:17

dates  23:13,
  16 29:16
  33:4,20,25

day  12:15
  14:14
  15:25
  17:4,5,19
  18:1,19,25
  22:24
  29:19
  39:24

days  17:8,9
  33:9 37:9
  39:19

deadlines
  30:16

deal  31:2,
  21

dealing
  32:12

decided
  21:15
  37:6,8
  38:1

decision
  22:16

23:24
38:2,4

**defendant**
42:24

**defendant's**
42:21

**deny** 34:15

**dependability**
21:17
32:19,20

**depends**
12:20

**deposition**
8:1 23:10
33:19
43:11

**describes**
28:19

**designated**
23:8

**detail** 9:19

**detailed**
15:10

**directly**
17:24 30:9

**disciplined**
30:19

**discussed**
17:6,10

**discussion**
18:9

**displayed**
14:21 19:7

**document**
14:18,24
19:2,5
21:5
40:18,20

**documentation**
40:1,8

**documents**
42:16

**drive** 12:19

**drives** 10:6

**driving**
10:21
13:14
38:17 39:4

**drop** 10:14

**dropped** 14:5

**dropping**
11:12

**due** 21:15

**Duluth** 8:20

**duly** 8:12

---
**E**
---

**e-mail** 15:6
20:21,23
21:10 22:7
26:10,20
27:1,12,
16,19,22
28:15,16

33:8 40:23
41:7,13
42:4,6,20
43:1

**e-mailed**
27:5

**e-mailing**
27:11

**e-mails**
26:19
27:23 28:5

**earlier** 15:9
37:22
40:18

**effed** 29:22

**elected**
41:13

**emergency**
34:2,3

**employed**
9:3,6
16:14

**employer**
14:25

**employment**
17:6,11

**En** 39:9

**end** 21:15

**Enterprises**
9:8

**evening**
23:17

**eventually**
11:23

**EXAMINATION**
8:14

**exhibit** 21:9
42:4,7,10
43:1,2

**exhibits**
42:3

**exit** 11:15

**expensive**
38:10

**explain**
15:13
31:23

**explaining**
10:22

---
**F**
---

**face** 12:5

**fact** 38:21

**fair** 22:20

**fast** 37:12

**feel** 14:8

**feeling** 14:2

**fiber** 16:18
32:2,9

**field** 16:12
23:18,25
31:25
40:15,22

file  12:6
  13:16,18

filing  12:24

final  23:24

find  28:6

finish  31:15
  33:2

finished
  39:4

fire  11:18
  20:16
  23:21 24:9

fired  12:14
  15:20,21
  20:2,6
  23:20
  24:2,18
  25:5,22,25
  38:9 39:1,
  7

firing
  22:22,25
  23:24
  28:25

forget  30:14

form  24:25
  26:21
  35:24
  40:11 41:2

forward  17:1

fridge  14:12

fuck  20:9,
  11

fuel  11:18

full  8:16
  11:25 31:8
  34:3

fully  17:13

---

**G**

Gardener
  42:22

Gardner  15:4
  17:18,22
  18:22
  19:24 20:8
  22:8,15,21
  23:14,19
  24:3,23
  25:18,23
  26:1,3
  42:8

Gardner's
  24:2,23
  25:5,15

gave  12:23
  13:1 17:15
  18:18 32:5

George  20:16

Georgia  8:21
  37:3

give  12:24
  13:10
  20:3,15,25
  27:8,13,14
  28:10 32:4
  41:23

giving  26:19
  27:2,16
  32:16

Golaub  8:1,
  11,18,23
  31:7 35:19
  40:8 41:5,
  12 43:11

good  12:2
  14:2,3,10
  37:12

grasping
  24:12

great  21:18

Greensboro
  37:3

guess  10:18

guy  10:22
  11:10
  12:11,14
  13:10

---

**H**

happen  25:24

happened
  9:25 10:20
  15:10
  29:13
  36:12

hard  39:20

head  10:16

hear  9:4
  25:3,17

29:8

heard  39:11

Hey  12:10
  14:2 32:1
  34:13

Hill  37:3

hiring  9:13

hit  10:22,
  24,25

hotel  13:25
  14:11

hour  10:17
  12:20

hourly  26:15
  27:1 40:24
  41:8

hours  13:16
  32:11 39:9

how's  23:18

hub  32:13

hurry  11:6

---

**I**

identification
  42:11

identifies
  28:16

identify
  10:8 23:7
  25:4
  27:15,22
  28:4 42:12

identifying
  41:14

immediately
  12:14

important
  30:15,24
  31:1

improvement
  20:19
  21:16
  22:12
  28:22,25

improving
  31:20

in-between
  13:24

incident
  9:16,24
  10:1,5,19
  13:23
  24:21
  25:4,21
  27:4 29:12
  30:4

inconvenience
  21:18

indicating
  33:17

inform   9:24
  18:22

information
  10:3 13:5,
  10 15:10
  17:15 28:6

38:22

informed
  9:23 38:5

instance
  24:1

instruction
  38:24

instructions
  32:5

interrupt
  31:10,11

involved
  9:12

issue   32:10

issues   23:17
  31:18,19

item   14:21
  19:7 21:1
  22:3 28:11

─────────────
       J
─────────────

job   18:9
  30:14,19,
  20,21,25
  31:1 34:9
  35:3,9
  40:9

jobsite
  15:21
  34:7,16,22
  35:5,10,23
  36:5,10,18
  37:1

John   10:13
  11:3,14
  13:12 15:4
  17:12,13,
  14,15
  19:24 20:8
  22:8 23:24
  29:23,24
  32:16
  34:19 35:1
  36:24 42:8

John's   10:13

June   9:13

─────────────
       K
─────────────

kind   9:16,
  25 39:25

knew   37:22

─────────────
       L
─────────────

lack   21:16,
  17 28:22,
  25 32:19,
  20

lacking
  32:14

land   25:12

large   16:24

lead   26:6,8

learn   32:3

leave   10:19
  11:9

Lee   11:10,
  12 15:12,
  13,17
  16:16,17

left   12:15
  13:15
  14:16

letter   21:6
  27:14

letting
  18:22 27:1

litigation
  15:7

location
  10:14,15,
  18,19
  11:14,24
  13:22,25
  29:20
  31:22 32:1
  39:8

long   9:9,10
  24:9 37:4

looked   26:9

lot   38:9

─────────────
       M
─────────────

made   29:19,
  20 38:2,4

main   32:13

make   14:8
  24:24
  31:7,14
  38:8

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**                    Index: makes..people

makes   23:24
  31:24

making   24:3
  30:5,10
  32:6,17

manner   31:4

marked   42:11

market   30:1

markets
  34:12,24
  36:15,19

marking   19:4
  21:9

meet   11:3
  13:23
  30:15
  37:16,18

meeting
  13:24

message
  29:22
  33:21

messages
  19:13,21,
  24 42:8,22

Michael   9:13
  15:23
  19:24
  21:11 42:9

Mike   11:9,
  14,17
  12:15
  21:22
  23:19

30:12
  37:15,20

miles   32:12

mind   30:14

minutes
  10:17 22:7

minutes'
  12:19

miscommunicati
on   15:13

mistake
  29:21
  32:12

mistakes
  29:19
  30:5,10
  32:6,17

moment   39:2

month   39:18

months   35:2

move   10:15
  11:22
  34:12

moved   11:11,
  23 14:16

multiple
  29:2,10
  40:24,25
  41:8,14

muted   29:6

---
**N**
---

N-WORD   12:1,
  11

needed   36:24

network
  31:2,3
  32:10

networks
  31:6

normal   23:21

Nos   42:10

note   42:6

notes   33:14,
  18

notice   8:25
  17:3 23:10

November   8:3
  43:12

number
  42:13,19,
  20

numbers
  31:22
  42:15

numerous
  23:3 29:13

---
**O**
---

objection
  8:7 24:25
  25:8,12

26:21
  35:24
  40:11
  41:2,10,17

occurred
  9:16,21

office   27:19
  28:1 38:9

on-site
  16:13
  30:17
  39:19

Opelika
  12:16,18
  34:25

owned   16:17

owner   15:12,
  17

---
**P**
---

p.m.   21:11
  22:7 26:11

parties
  14:21 19:7
  21:1 22:3
  28:11
  35:13

partner   9:10
  38:5

partners   9:7

pass   41:6

paused   35:15

people   23:21

26:19
27:15 28:4

peoples   38:7

perform
30:20
38:18

performance
17:25
18:2,4,6,
7,9 23:2,
15,18
32:15 40:9

performing
18:13

period   24:18

person   15:14
24:5

person's
12:22

PH   37:3

phone   10:4
12:8

photos   10:7

physically
38:14

pick   13:20

pin   10:14

place   39:6

plaintiff
42:9,23

plaintiff's
42:10

point   17:20
36:16

police   12:7,
16 13:11,
16

position
38:2

potential
9:24

present
38:13

pretty   27:19
39:20

previous
29:19

previously
8:6 17:12,
21

print   40:22

prior   18:6
40:2

proceedings
43:10

produced
14:24
42:23

production
42:21

project
16:24
26:5,6,8
39:4

prompt   30:16

pronounce
16:5

providing
26:19

punched   11:1

purported
28:16

put   28:15
31:3 33:18

putting
11:18

_____

Q

question
25:13
26:24
31:8,15
33:2 35:19
40:13
41:5,12

questions
14:19 19:3
42:1

quit   24:9

quits   27:13

quote   32:18

_____

R

racial   10:5
15:15,23

reached   10:9
12:21 22:8

read   20:4
21:19
22:13,18
43:9

reads   15:12

ready   34:18

real   20:9

reason   20:3,
15,22
27:8,9

reasons
21:21
26:20
27:2,6,16
28:4,8,16,
19 40:24,
25 41:8,15

recall   10:2
16:22
26:12
27:23

receive   38:6

received
10:4 17:3
27:16

receiving
10:2 32:15

recognize
10:8

record   8:8
43:6,8

red   10:6

referring

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023          Index: remember..South**

30:21

remember
 13:1 24:16
 26:7

reminded
 35:13

remotely
 8:10

repeat  9:5
 26:24
 35:19
 39:14

report  12:7,
 24 13:17,
 19

reporter  8:9
 13:3,6
 29:4 31:9
 35:12 40:4
 42:2 43:5

required
 25:13

residential
 8:19

resource
 29:12
 40:21

resources
 40:23

respect  8:24
 10:1 23:9
 28:8 32:18

responding
 20:9

responds
 22:16

rest  39:5

review  43:9

reviewed
 21:5

road  37:4

ROBERTS  8:15
 9:1,2
 14:17,23
 16:10
 19:6,9
 21:3 22:5
 25:1,10
 26:22
 28:13 29:5
 33:1 35:18
 36:1,3
 40:5,7,12
 41:3,11,21
 42:3,14,19
 43:3,7

Rocks  37:3

rode  34:18

route  39:9

───────────
         S
───────────

Satellite
 8:20

Savannah
 35:1 37:16

seconds
 11:16

send  10:7
 27:12
 31:22,25
 35:22 36:5
 41:7,13

sense  31:24

sentence
 15:11

September
 17:2 20:2,
 20 21:11
 26:11
 28:15 42:5

Severin  19:5

Shaw  17:7
 38:18

shoot  12:4

shortening
 20:11

show  14:18
 19:2 22:1
 33:10,11,
 12

sic  16:2
 23:17,18
 37:24 38:7

sign  43:9

simple  41:12

simply  25:19

single  24:21
 25:4

sir  8:16
 14:20

19:10
 21:24
 35:25
 36:8,11

sit  27:21
 38:25

sitting
 10:13

situation
 12:15
 29:25
 37:22

slur  10:6
 15:15,23

small  29:11
 40:17

SMITH  8:22
 19:4 24:25
 25:8 26:21
 35:24
 40:11
 41:2,10,17
 42:1,12,18
 43:1,4

someone's
 23:22 31:3

sort  11:23

South  34:8,
 14,16,22,
 23 35:2,4,
 10,22
 36:5,10,
 17,22,25
 37:2

southeast
  34:11

speak  18:1,4
  23:8,17
  28:24
  29:2,13,
  16,18
  35:13

specific
  23:16
  33:18 37:5

specifically
  31:18,20
  36:21

Specifics
  31:21

splice  31:6,
  25 32:2,9

splicer
  41:14

splicers
  24:8,13,17

splicing
  16:18
  30:22 31:1

spoke  17:12,
  13,25
  29:10,23
  30:3 34:24
  36:15,19

spoken  18:7

spot  10:12

stamp  19:22

start  9:11
  18:16 26:3
  31:15
  32:13
  34:25

started
  18:17
  26:1,6,7
  30:7

starting
  35:3

state  8:16,
  22

stated  10:6
  13:7 28:18

statement
  15:3

station
  12:16
  13:11

steal  38:7

stipulated
  8:7

stop  11:18

stopped  35:2
  39:5

stopwatch
  18:18

stretch  37:5

stuff  30:13
  32:5
  37:14,23
  38:7,8

sum  17:16

superiors
  10:9

supervising
  26:1,4

supervisor
  11:5 16:13
  17:15
  23:22,25

Supervisors
  13:4

supplement
  28:3

supposed
  32:23
  33:10
  37:18,21

swear  8:9

sworn  8:12

_____

_____
T

tag  13:13

taking  35:6

talk  11:24

talked  23:14

talker  37:12

talking  14:1
  27:10

task  39:23

teaching
  30:12

team  23:22,
  23 24:2,23
  25:5,15,22
  26:2,4

telling
  23:22
  24:3,23
  25:6,23

tenure  21:15

term  30:8,
  24

term-  27:20

terminate
  17:23,25
  26:19 37:8
  38:3

terminated
  15:22,25
  17:2 18:23
  19:1 21:22
  24:14,22
  27:20 37:9
  38:12
  41:15

terminating
  17:6,11,18
  18:25
  20:22 27:8
  41:8

termination
  17:4,10
  18:6,10
  21:6 24:4,
  24 27:2,6,
  14,17

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**          Index: terrible..worked

28:5,9,17,
20 30:9
38:19 39:7
40:2 41:1
42:6,20

**terrible**
31:9

**testified**
8:12 36:1

**testifying**
8:23

**testimony**
18:21

**text** 19:12,
21,23
33:21
42:8,22

**texting** 33:8

**Thompson**
11:5 16:2,
4,12

**thought**
11:11
37:11

**threatened**
12:4

**time** 16:13
17:10
18:8,11
24:6,18
30:1,18
31:4,9
33:13
35:4,10,13

39:21 41:7

**timely** 31:4

**times** 18:3
23:3 29:2,
10,13 30:2
34:1

**today** 23:10
27:21
30:13
33:19

**told** 11:15
16:2 20:18
22:11
30:17

**tomorrow**
30:13

**tools** 38:7,
10

**topics** 8:24
23:9,12

**town** 38:17
39:2

**track** 32:11

**traffic**
12:20

**training**
17:13
18:13,14
21:16
22:12
24:10
28:23,25
29:3,11
30:7,10,22

31:20
32:15
34:10,11

**transcript**
43:10

**travel** 34:18
36:23

**troubleshoot**
32:14

**truck** 10:6,
7,8,22,25
38:10

**true** 22:20

**Trystar** 9:7
21:15,22

**turned** 11:19

**Tuskegee**
12:19

───────────

**U**

**Uh-huh** 40:16

**understand**
9:15,23
19:23
20:20 23:6

**understanding**
9:20 11:25

**urgent** 37:23

───────────

**V**

**van** 38:6

**vehicle**

13:13
18:18

**verbal** 40:3,
5,14

**verbally**
29:10
40:15,22

**verify** 28:2

**videoconferenc
e** 8:1 43:11

**view** 14:22
19:8 21:2
22:4 28:12

───────────

**W**

**waiting**
35:14

**waived** 43:9

**wanted** 22:1
39:3

**week** 13:19
18:5,6,10
19:17
34:4,17

**weeks** 30:8

**whatsoever**
22:17

**work** 12:10
24:12
32:11
33:11 34:3
39:19,22

**worked** 16:17

**MICHAEL AERTS vs TRYSTAR ENTERPRISES, LLC**
**Aaron Golaub on 11/14/2023**                    Index: worker..years

```
34:10,19
36:19

worker  26:16
27:5 40:24
41:8

working
11:22 13:8
26:8 30:9
35:2 37:4
39:10,12,
15

works  16:4
34:20

worry  11:2

write  29:12

write-ups
40:22

written  15:3
40:1

wrong  32:9

wrote  29:21

WTF  20:12
```

_____
          **Y**
_____

```
ya  20:2

year  9:17
15:9 35:21

years  24:14,
15
```